UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALLEY INSURANCE COMPANY and
TRINITY INSURANCE COMPANY,

Plaintiffs,

v.

WELLINGTON CHESWICK, LLC, *et al.*,

Defendants.

CASE NO.  C05-1886RSM

MEMORANDUM ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on defendants American States Insurance Company's ("American States") and American Economy Insurance Company's ("American Economy") Motion for Summary Judgment regarding the issue of whether they are required to contribute to plaintiffs' defense of Wellington Cheswick, LLC and Wellington Crown Corporation Inc. ("the Wellington entities") in an action currently proceeding in state court. (Dkt. #68).  Defendants argue that the Wellington entities are not additional insureds under their policies, and that contribution is appropriate only among insurers jointly and severally liable for the same damage.

Plaintiffs request that summary judgment be granted in their favor because the

ORDER
PAGE - 1

Wellington entities are additional insureds under defendants' policies, and therefore, defendants are obligated to contribute to the cost of defending those additional insureds. (Dkt. #74). For the reasons set forth below, the Court agrees with plaintiffs and DENIES defendants' motion for summary judgment.

## II.  DISCUSSION.

### A.  Background

This action arises from a construction defect lawsuit currently proceeding in King County Superior Court. Defendant Wellington Cheswick, LLC was the developer of a new construction condominium project known as the Cheswick Lanes Condominiums. Co-defendant First Wellington Crown Corporation, Inc. was the managing member of Wellington Cheswick. The general contractor on the project was Wellington Builders of Washington, Ltd. Wellington Builders hired a number of subcontractors to complete the work on the project. Work began on or about November 5, 1999, and was completed no later than September 2002.

During the project, the developer, general contractor and subcontractors each carried their own commercial general liability insurance policies. In addition, the subcontracts required the subcontractors to cause Wellington Builders and Wellington Cheswick to be named as additional insureds under the subcontractors' liability policies. Defendant American Economy issued a policy to Westco Services, the subcontractor responsible for the flooring, countertops and tile work. Co-defendant American States issued a policy to JJ Plumbing, the subcontractor responsible for the plumbing work. Each of the policies contained endorsements extending additional insured coverage under certain circumstances to another organization if the named insureds signed a contract requiring that. The American Economy policies stated there was additional insured coverage only for liability arising out of a subcontractor's ongoing operations. The American States policies stated that there was additional insured coverage to the extent that a subcontractor was held liable due to its ongoing operations for that additional insured.

In 2004, the Cheswick Lane Owners Association sued the Wellington entities in King County Superior Court, alleging that the condominiums have been damaged due to defective construction. The alleged defects include defects in the construction of the roof performed by America 1st Roofing, defects in the mechanical work performed by G&M Mechanical, defects in the plumbing performed by JJ Plumbing and defects in the tile work in the bathrooms performed by Westco Services. Plaintiff Valley Insurance Company insured America 1st Roofing, and co-plaintiff Trinity Insurance Company insured G&M Mechanics.

After the lawsuit was filed, Wellington Builders assigned any rights it had against the subcontractors to Wellington Cheswick, which subsequently brought a third party complaint against 19 of the subcontractors. Wellington Cheswick and First Crown Corporation ("the Wellington entities") tendered claims for defense and indemnity in the initial lawsuit to their own insurers, Lloyds of London and National Fire and Marine Insurance Company. The Wellington entities then tendered claims for defense and indemnity to many of the subcontractors' insurers, alleging that the Wellington entities were additional insureds under those policies. American Economy and American States denied the tenders. Valley Insurance and Trinity Insurance accepted the tenders under a reservation of rights.

Valley and Trinity then brought the instant action seeking a declaratory judgment regarding the obligations of the various subcontractors' insurers to contribute to the defense and indemnity obligations of the Wellington entities. This motion for summary judgment followed.

**B. Summary Judgment Standard**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *See*

*F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 257. Mere disagreement, or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment. *See California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. Material facts are those which might affect the outcome of the suit under governing law. *See id.* In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747). Furthermore, conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F. 3d 337, 345 (9th Cir. 1995). Similarly, hearsay evidence may not be considered in deciding whether material facts are at issue in summary judgment motions. *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610 F. 2d 665, 667 (9th Cir. 1980).

Here, plaintiffs agree, for purposes of this motion, with defendants' factual allegations. (Dkt. #74 at 4). Plaintiffs also agree that the issues raised in this motion should be resolved on summary judgment, as there is no need to prolong litigation when the facts are not in dispute.

**C. Applicable Law**

The instant case was brought in this Court based on diversity of the parties. (Dkt. #1). Accordingly, the issues presented are governed by Washington State law. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941); *Insurance Co. N. Am. v. Federal Express Corp.*, 189 F.3d 914, 919 (9th Cir. 1999) (explaining that in an ordinary diversity case, federal

ORDER
PAGE - 4

courts apply the substantive law of the forum in which the court is located).  The parties do not appear to dispute that Washington State law is applicable in this case.

In Washington, interpretation of an insurance contract is a matter of law, which requires the Court to consider the contract in its entirety and to give effect to each policy provision. *Allstate Ins. Co. v. Peasley*, 131 Wn.2d 420, 423-24 (1997); *PUD No. 1 of Klickitat County v. International Ins. Co.*, 124 Wn.2d 789, 881 (1994).  In addition, insurance contracts are interpreted using ordinary contract interpretation principles.  Generally, insurance contracts are interpreted in the manner understood by the average purchaser of the policy.  *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 877 (1990); *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 480 (1984).  Thus, terms contained in insurance policy are given their plain, ordinary, and popular meanings.

A policy is ambiguous only if its provisions are susceptible to two different interpretations, both of which are reasonable.  *Id.* at 424; *McDonald Industries v. Rollins Leasing Corp.*, 95 Wash 2d 909, 913 (1981).  In determining whether an ambiguity exists, the Court views the language the way it would be read by the average insurance purchaser, and will give any undefined terms their ordinary meanings, not technical, legal meanings.  *Allstate Ins.*, 131 Wn.2d at 424.  Ambiguous provisions are generally construed against the insurer; however, "[a]n ambiguity will not be read into a contract where it can be reasonably avoided by reading the contract as a whole."  *Universal/Land Const. Co. v. City of Spokane*, 49 Wn. App. 634, 637 (1987).

**D.  Motions to Strike**

As a preliminary matter, defendants have asked that the Court strike or otherwise decline to consider three documents – the Wellington entities' joinder in plaintiffs' motion for summary judgment, the declaration of Brent Beecher in support of plaintiffs' response, and the declaration of Maria Lange filed in opposition to summary judgment.  The Court addresses each of these

ORDER
PAGE - 5

documents in turn below.

### 1. Cheswick's Joinder in Motion for Summary Judgment

On July 17, 2006, the Wellington entities filed a Joinder in plaintiffs' opposition to the instant motion for summary judgment. (Dkt. #73). In their reply, filed July 21, 2006, defendants moved to strike that Joinder, arguing that the Wellington entities had failed to file an Answer to the Amended Complaint, and therefore had no standing to oppose the motion for summary judgment. (Dkt. #79). However, the Wellington entities had filed an Answer and Third Party Complaint earlier that day. (Dkt. #77). Accordingly, the Court DENIES defendants' request to strike the Wellington entities' Joinder.

### 2. Declaration of Brent Beecher

Defendants next move to strike the Declaration of Brent Beecher (Dkt. #75) submitted in support of plaintiffs' opposition to summary judgment. Defendants argue that Mr. Beecher, as attorney of record for plaintiffs, cannot properly authenticate the documents attached to his declaration, and has improperly testified to the truth of certain facts in this case. The Court agrees in part. Many of the documents attached to Mr. Beecher's declaration were provided to him by the Wellington entities' counsel, and were not prepared by Mr. Beecher or by anyone else at his direction. Nor does Mr. Beecher appear to have any direct knowledge of, or involvement with creating, the contents of those documents. Accordingly, the Court will GRANT defendants' motion to strike IN PART, declining to consider Exhibits B, E, F, G, I and J on this motion for summary judgment.

### 3. Declaration of Maria Lange

In an apparent concession that Mr. Beecher cannot properly authenticate several endorsements to insurance policies he had submitted with his declaration, plaintiffs have filed the Declaration of Maria Lange purporting to authenticate those documents. That declaration was filed on August 1, 2006, ten days after the instant motion had been noted for consideration on

the Court's motion calendar. Plaintiffs failed to ask permission for this late filing, nor did they provide any other explanation as to why this Court should consider such a late filing. Accordingly, the Court STRIKES the Lange Declaration as untimely, and declines to consider it on the instant motion for summary judgment.

### E. Duty to Defend

An insurer has a duty to defend if the complaint, construed liberally, alleges facts which, if proven, impose liability within the policy's coverage. *Unigard Ins. Co. v. Leven*, 97 Wn. App. 417, 425 (1999). If the alleged claims are clearly not covered, then the insurer has no duty to defend. *Cle Elum Bowl, Inc. v. N. Pac. Ins. Co.*, 96 Wn. App. 698, 703 (1999). Washington State law is clear that the interpretation of policy language contained in an insurance contract is a question of law. *See e.g.*, *Butzberger v. Foster*, 151 Wn.2d 396, 401 (2004); *Public Utility Dist. No. 1 of Klickitat County v. International Ins.* Co., 124 Wn.2d 787, 797 (1994); *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 730 (1992). Thus, the Court must determine whether the underlying complaint alleges facts which could impose liability within the policy's coverage, and whether such liability was within the scope of coverage of the additional insured endorsement.

In the underlying complaint, the homeowners allege "systemic construction defects" including:

> defects in the design and/or construction and/or in the materials and/or the installation of the materials, of the Project's envelope system and underlying weather resistive barrier, windows, doors and other penetrations, decks, attics, crawl spaces, walk-ways, venting systems, guardrails, fire safety systems, structural components, architectural components, shower tile installation, and plumbing and other mechanical systems.

(Dkt. #69, Ex. C at 37)**.**

As noted above, pursuant to the requirements of the subcontracts, the subcontractors obtained insurance policies with additional insured endorsements. Those endorsements extended additional coverage to the Wellington entities if certain circumstances existed. For

ORDER
PAGE - 7

example, the two policies issued to Westco by American Economy each contained a Liability Plus Endorsement. Those endorsements stated:

> **ADDITIONAL INSURED - BY WRITTEN CONTRACT, AGREEMENT OR PERMIT**
>
> The following paragraph is added to WHO IS AN INSURED (Section II):
>
> 5. Any person or organization for whom you are required by written contract, agreement or permit to provide insurance is an insured, subject to the following additional provisions:
>    . . .
>
>    b. The person or organization added as an insured by this endorsement is an insured only with respect to liability arising out of:
>       . . .
>
>       (2) Your ongoing operations for that insured, whether the work is performed by you or for you;
>       . . .

(Dkt. #70, Ex. A at AEI 0073 and Ex. B at AEI 0266). Thus, by express and unambiguous terms, the Wellington entities were only additional insureds with respect to Westco's liability arising from its ongoing operations for the Wellington entities.

Similarly, three policies issued to JJ Plumbing by American States each contained a Liability Plus Endorsement. Those endorsements stated:

> **ADDITIONAL INSURED - BY WRITTEN CONTRACT, AGREEMENT OR PERMIT**
>
> The following paragraph is added to WHO IS AN INSURED (Section II):
>
> 5. Any person or organization shown in the Schedule or for whom you are required by written contract, agreement or permit to provide insurance is an insured, subject to the following additional provisions:
>    . . .
>
>    b. The person or organization added as an insured by this endorsement is an insured only to the extent you are held liable due to:
>       . . .

ORDER
PAGE - 8

1                   (2)      Your ongoing operations for that insured, whether the work is performed by you or for you;

2                      . . .

3 (Dkt. #70, Ex. C at ASI 00254, Ex. D at ASI 00483 and Ex. E at ASI 00708).  Again, by

4 express and unambiguous terms, the Wellington entities were only additional insureds if JJ

5 Plumbing is held liable due to its ongoing operations for the Wellington entities.

6        Defendants essentially argue that the intent of these endorsements, as evidenced by the

7 "ongoing operations" language, was to limit additional insured coverage to losses that occurred

8 while the contractor was onsite or while work was actually in progress.  Thus, defendants assert

9 that the Wellington entities are not additional insureds here, where the underlying lawsuit alleges

10 damages that occurred after the work had been completed.  Accordingly, defendants argue that

11 they are not required to contribute to any defense or indemnity of the Wellington entities.  The

12 Court is not persuaded.

13        In the underlying complaint, the homeowners clearly allege that the work of the

14 subcontractors was performed in a deficient and defective way.  According to the homeowners,

15 the Wellington entities are liable for damage that resulted from construction that was not

16 properly performed by the subcontractors.  Because the term "ongoing operations" is undefined

17 in the policy, the Court looks to the common and ordinary meaning of the words to determine

18 whether the conduct complained of by the homeowners here can be so classified.  The dictionary

19 defines "ongoing" as "being actually in process; continuously moving forward."  Merriam-

20 Webster OnLine, http://www.m-w.com/dictionary/ongoing (last visited Oct. 20, 2006).

21 "Operations" is defined as, *inter alia*, "performance of a practical work or of something

22 involving the practical application of principles or processes."

23 http://www.m-w.com/dictionary/operations (last visited Oct. 20, 2006).  Thus, the common and

24 ordinary meaning of this phrase is simply those things that the company does.  *See Marathon*

25 *Ashland Pipe Line LLC v. Maryland Cas. Co.*, 243 F.3d 1232, 1238 (10th Cir. 2001).

26

ORDER
PAGE - 9

Accordingly, the Court agrees with plaintiffs that the only reasonable conclusion here is that the Wellington entities' alleged liability for property damage arises from the ongoing operations performed by the subcontractors. While the property damage may not have occurred during those ongoing operations, the alleged liability did. Therefore, the Court finds that the Wellington Entities are additional insureds under the policies at issue in this motion.

### F. Joint and Several Liability/Standing

Defendants next argue that they cannot be subject to contribution because their policies do not overlap with coverage that plaintiffs' policies include. Similarly, without citing to any authority, defendants argue that plaintiffs have no standing to seek contribution from them for the costs associated with defending the Wellington entities in the underlying state court action. These arguments stem from a fundamental misunderstanding of the action plaintiffs have brought.

In the instant action, plaintiffs have made clear that they are solely seeking "equitable contribution" to the defense of the Wellington entities from the subcontractors' insurers. As the court in *Hartford Casualty Ins. Co. v. Mt. Hawley Ins. Co.* stated, "each insurer has independent standing to assert a cause of action against its coinsurers for equitable contribution when it has undertaken the defense or indemnification of the common insured." 123 Cal. App. 4th 278, 287 (2004). The court explained:

> Equitable contribution . . . is the right to recover, not from the party *primarily* liable for the loss, but from a *co-obligor* who shares such liability with the party seeking contribution. In the insurance context, the right to contribution arises when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others. Where multiple insurance carriers insure the same insured and cover the same risk, each insurer has independent standing to assert a cause of action against its coinsurers for equitable contribution when it has undertaken the defense or indemnification of the common insured. Equitable contribution permits reimbursement to the insurer that paid on the loss for the excess it paid over its proportionate share of the obligation, on the theory that the debt it paid was *equally and concurrently* owed by the other insurers and should be shared by them pro rata in proportion to their respective coverage of the risk. The purpose of this

ORDER
PAGE - 10

> rule of equity is to accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent one insurer from profiting at the expense of others. . . .
>
> This right of equitable contribution belongs to each insurer individually. It is not based on any right of subrogation to the rights of the insured, and is not equivalent to "standing in the shoes" of the insured. . . . Instead, the reciprocal contribution rights of coinsurers who insure the same risk are based on the equitable principle that the burden of indemnifying or defending the insured with whom each has independently contracted should be borne by all the insurance carriers together, with the loss equitably distributed among those who share liability for it in direct ratio to the proportion each insurer's coverage bears to the total coverage provided by all the insurance polices [sic]. . . . As a matter of equity, insurers of the "same risk" may sue each other for contribution. . . . This right is not a matter of contract, but flows "'from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden.'" . . . The idea is that the insurers are "equally bound," so therefore they "all should contribute to the payment." . . . ' . . .
>
> Unlike subrogation, the right to equitable contribution exists independently of the rights of the insured. It is predicated on the commonsense principle that where multiple insurers or indemnitors share equal contractual liability for the primary indemnification of a loss or the discharge of an obligation, the selection of which indemnitor is to bear the loss should not be left to the often arbitrary choice of the loss claimant, and no indemnitor should have any incentive to avoid paying a just claim in the hope the claimant will obtain full payment from another coindemnitor. . . .

*Hartford Casualty Ins. Co.*, 123 Cal. App. 4th at 287-288 (internal quotations omitted) (emphasis in original). The Court finds this reasoning persuasive in the instant action.

As the Court already determined above, the Wellington entities are additional insureds under defendants' insurance policies, and the underlying complaint triggered defendants' duty to defend. Accordingly, the Court finds that plaintiffs do have standing to bring this action, and it is of no import that plaintiffs' policies do not cover the same subcontractors as defendants' policies. Therefore, summary judgment shall be entered in favor of plaintiffs.

### III. CONCLUSION

Having reviewed defendants' motion for summary judgment (Dkt. #68), plaintiffs' response (Dkt. #74), the Wellington entities' Joinder (Dkt. #73), defendants' reply (Dkt. #79), the declarations and exhibits in support of those briefs, with the exception of those stricken

above, and the remainder of the record, the Court hereby ORDERS:

(1) Defendants' Motion for Summary Judgment (Dkt. #68) is DENIED.

(2) Plaintiff's request for summary judgment is GRANTED.  For the reasons set forth above, the Court finds that the Wellington entities are additional insureds under the Westco and JJ Plumbing policies, and therefore, defendants are required to contribute to the defense of the Wellington entities in the underlying action.

(3) Because defendants' motion for summary judgment focused solely on the Westco and JJ Plumbing policies, <u>the Court makes no decision</u> with respect to coverage under the policies issued by American States to the paving subcontractor, Frunz Construction, Inc., the siding subcontractor, International Building Association, and the landscaping contractor, Premier Concepts, Inc.  As a result, American Economy Insurance Company is hereby DISMISSED as a defendant to this action.  However, to the extent that plaintiffs seek a declaratory judgment against American States Insurance Company based on the policies issued to the paving subcontractor, the siding subcontractor, and the landscaping contractor, American States REMAINS a party to this action.

(4) The Clerk shall forward a copy of this Memorandum Order to all counsel of record.

DATED this 20th day of October, 2006.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE