UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALLEY INSURANCE COMPANY and
TRINITY INSURANCE COMPANY,

Plaintiffs,

v.

WELLINGTON CHESWICK, LLC, *et al.*,

Defendants.

CASE NO.  C05-1886RSM

MEMORANDUM ORDER
DENYING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

## I.  INTRODUCTION

This matter comes before the Court on defendant Hartford Casualty Insurance Company's ("Hartford") Motion for Summary Judgment regarding the issue of whether it is required to contribute to plaintiffs' defense of Wellington Cheswick, LLC and Wellington Crown Corporation Inc. ("the Wellington entities") in an underlying state court proceeding.  (Dkt. #93).  Defendant argues that plaintiffs are not entitled to contribution to the defense or indemnity of the Wellington entities because they did not insure against the same risks as defendant.  Defendant further asks the Court to issue an Order barring other insurers from bringing a contribution claim against it.

Plaintiffs request that summary judgment be granted in their favor because the unity of risk requirement has been met in this case, and the Wellington entities are additional insureds under defendant's policy, and therefore defendant is obligated to contribute to the cost of defending those

ORDER
PAGE - 1

additional insureds.  (Dkt. #105).  Plaintiffs also ask the Court to deny defendant's request for an order barring additional litigation against defendant.

For the reasons set forth below, the Court agrees with plaintiffs and DENIES defendants' motion for summary judgment.

## II.  DISCUSSION.

### A.  Background

This action arises from a construction defect lawsuit in King County Superior Court. Defendant Wellington Cheswick, LLC was the developer of a new construction condominium project known as the Cheswick Lanes Condominiums.  Co-defendant First Wellington Crown Corporation, Inc. was the managing member of Wellington Cheswick.  The general contractor on the project was Wellington Builders of Washington, Ltd.  Wellington Builders hired a number of subcontractors to complete the work on the project.  Work began on or about November 5, 1999, and was completed no later than September 2002.

During the project, the developer, general contractor and subcontractors each carried their own commercial general liability insurance policies.  In addition, the subcontracts required the subcontractors to cause Wellington Builders and Wellington Cheswick to be named as additional insureds under the subcontractors' liability policies.  Defendant Hartford issued a policy to International Building Association ("IBA"), the subcontractor responsible for siding work.  The policy contained an endorsement extending additional insured coverage to Wellington Builders and First Wellington Crown Corporation, but only with respect to liability arising out of the operations of the named insured.

In 2004, the Cheswick Lane Owners Association sued the Wellington entities in King County Superior Court, alleging that the condominiums had been damaged due to defective construction.  The alleged defects included, among others, defects in the construction of the roof performed by America 1st Roofing, defects in the mechanical work performed by G&M Mechanical,

and defects in the siding work performed by IBA.  Plaintiff Valley Insurance Company insured

America 1st Roofing, and co-plaintiff Trinity Insurance Company insured G&M Mechanics.

After the lawsuit was filed, Wellington Builders assigned any rights it had against the

subcontractors to Wellington Cheswick, which subsequently brought a third party complaint against

19 of the subcontractors.  The Wellington entities tendered claims for defense and indemnity in the

initial lawsuit to their own insurers, Lloyds of London and National Fire and Marine Insurance

Company.  The Wellington entities then tendered claims for defense and indemnity to many of the

subcontractors' insurers, alleging that the Wellington entities were additional insureds under those

policies.  Hartford denied the tender.  Valley Insurance and Trinity Insurance accepted the tenders

under a reservation of rights.

Valley and Trinity then brought the instant action seeking a declaratory judgment regarding

the obligations of the various subcontractors' insurers to contribute to the defense and indemnity

obligations of the Wellington entities.

In the meantime, the underlying litigation was settled on behalf of IBA.  Hartford and

American States Insurance Company funded that $240,000 settlement.  This motion for summary

judgment followed.

**B. Summary Judgment Standard**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).   The Court must draw all

reasonable inferences in favor of the non-moving party.  *See F.D.I.C. v. O'Melveny & Meyers*, 969

F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994).  The moving party has

the burden of demonstrating the absence of a genuine issue of material fact for trial.  *See Anderson*,

477 U.S. at 257.  Mere disagreement, or the bald assertion that a genuine issue of material fact

1  exists, no longer precludes the use of summary judgment.  *See California Architectural Bldg.*

2  *Prods., Inc., v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

3        Genuine factual issues are those for which the evidence is such that "a reasonable jury could

4  return a verdict for the non-moving party."  *Anderson,* 477 U.S. at 248.  Material facts are those

5  which might affect the outcome of the suit under governing law.  *See id.*  In ruling on summary

6  judgment, a court does not weigh evidence to determine the truth of the matter, but "only

7  determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.*, 41 F.3d 547, 549

8  (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747).  Furthermore, conclusory or

9  speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment.

10 *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F. 3d 337, 345 (9th Cir. 1995).

11 Similarly, hearsay evidence may not be considered in deciding whether material facts are at issue in

12 summary judgment motions.  *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610 F. 2d 665, 667 (9th

13 Cir. 1980).

14        Here, plaintiffs agree, for purposes of this motion, with defendants' factual allegations.

15 (Dkt. #105 at 4).  Plaintiffs also agree that the issues raised in this motion should be resolved on

16 summary judgment, as there is no need to prolong litigation when the facts are not in dispute.

17        **C.  Applicable Law**

18        The instant case was brought in this Court based on diversity of the parties.  (Dkt. #1).

19 Accordingly, the issues presented are governed by Washington State law.  *See Klaxon Co. v.*

20 *Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941); *Insurance Co. N. Am. v. Federal Express*

21 *Corp.*, 189 F.3d 914, 919 (9th Cir. 1999) (explaining that in an ordinary diversity case, federal

22 courts apply the substantive law of the forum in which the court is located).  The parties do not

23 appear to dispute that Washington State law is applicable in this case.

24        In Washington, interpretation of an insurance contract is a matter of law, which requires the

25 Court to consider the contract in its entirety and to give effect to each policy provision.  *Allstate*

26

ORDER
PAGE - 4

*Ins. Co. v. Peasley*, 131 Wn.2d 420, 423-24 (1997); *PUD No. 1 of Klickitat County v. International Ins. Co.*, 124 Wn.2d 789, 881 (1994).  In addition, insurance contracts are interpreted using ordinary contract interpretation principles.  Generally, insurance contracts are interpreted in the manner understood by the average purchaser of the policy.  *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 877 (1990); *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 480 (1984).  Thus, terms contained in an insurance policy are given their plain, ordinary, and popular meanings.

A policy is ambiguous only if its provisions are susceptible to two different interpretations, both of which are reasonable.  *Id.* at 424; *McDonald Industries v. Rollins Leasing Corp.*, 95 Wash 2d 909, 913 (1981).  In determining whether an ambiguity exists, the Court views the language the way it would be read by the average insurance purchaser, and will give any undefined terms their ordinary meanings, not technical, legal meanings.  *Allstate Ins.*, 131 Wn.2d at 424.  Ambiguous provisions are generally construed against the insurer; however, "[a]n ambiguity will not be read into a contract where it can be reasonably avoided by reading the contract as a whole."  *Universal/Land Const. Co. v. City of Spokane*, 49 Wn. App. 634, 637 (1987).

### D.  Obligation to Contribute to Defense

As this Court has previously explained, an insurer has a duty to defend if the complaint, construed liberally, alleges facts which, if proven, impose liability within the policy's coverage.  *Unigard Ins. Co. v. Leven*, 97 Wn. App. 417, 425 (1999).  If the alleged claims are clearly not covered, then the insurer has no duty to defend.  *Cle Elum Bowl, Inc. v. N. Pac. Ins. Co.*, 96 Wn. App. 698, 703 (1999).  In the underlying complaint, the homeowners allege "systemic construction defects" including:

> defects in the design and/or construction and/or in the materials and/or the installation of the materials, of the Project's envelope system and underlying weather resistive barrier, windows, doors and other penetrations, decks, attics, crawl spaces, walk-ways, venting systems, guardrails, fire safety systems, structural components, architectural components, shower tile installation, and plumbing and other mechanical systems.

1   (Dkt. #69, Ex. C at 37).  There appears to be no dispute that work performed by IBA was at issue

2   in the underlying complaint.

3       Pursuant to the requirements of the subcontracts, the subcontractors obtained insurance

4   policies with additional insured endorsements.  Those endorsements extended additional coverage

5   to the Wellington entities if certain circumstances existed.  Hartford's policy provides additional

6   insurance coverage to the Wellington entities with respect to liability arising out of the operations of

7   IBA.

8       Defendant essentially argues that plaintiffs are not entitled to contribution because their

9   policies covered different risks.  Specifically, plaintiffs' policies pertained to the roofing and

10  mechanical work, while defendant's policy pertained to siding work.  The Court previously

11  addressed essentially the same question on a separate motion for summary judgment in this action.

12  In that Order, relying on *Hartford Casualty Ins. Co. v. Mt. Hawley Ins. Co.*, 123 Cal. App. 4th 278,

13  287 (2004), this Court noted that:

14          Equitable contribution . . . is the right to recover, not from the party *primarily*
            liable for the loss, but from a *co-obligor* who shares such liability with the party
15          seeking contribution.  In the insurance context, the right to contribution arises
            when several insurers are obligated to indemnify or defend the same loss or claim,
16          and one insurer has paid more than its share of the loss or defended the action
            without any participation by the others.  Where multiple insurance carriers insure
17          the same insured and cover the same risk, each insurer has independent standing
            to assert a cause of action against its coinsurers for equitable contribution when
18          it has undertaken the defense or indemnification of the common insured.
            Equitable contribution permits reimbursement to the insurer that paid on the loss
19          for the excess it paid over its proportionate share of the obligation, on the theory
            that the debt it paid was *equally and concurrently* owed by the other insurers and
20          should be shared by them pro rata in proportion to their respective coverage of
            the risk.
21
22  *Hartford Casualty Ins. Co.*, 123 Cal. 4th at 287 (internal quotations omitted) (emphasis in

23  original).  The Court concluded that because it had determined that there was a common obligation

24  to defend among the insurers involved on that motion, it was of no import that plaintiffs' policies

25  did not cover the same subcontractors as defendants' policies.  It is important to note that this

26  Court was focusing only on the question of whether there was an obligation to contribute to the

ORDER
PAGE - 6

1    defense of the Wellington entities, not whether there was a duty to indemnify.

2         In such situations, Washington state courts have reached the same conclusion.  For example,

3    in *Karnatz v. Murphy Pacific Corp.*, 8 Wn. App. 76 (1972), the Washington Court of Appeals

4    explained:

> The principle or doctrine of contribution is one of equality in bearing a common
> burden.  One who has paid the whole of a *common* obligation is entitled to
> recover one-half of his payment from one who is *equally* obligated.  Although the
> doctrine of contribution is founded in equity and not upon contract, it applies with
> respect to contractual obligations.  Surety and indemnity contracts which result
> in duplicate coverage of a single risk are frequently the subject of equity's concern
> for equality.
>
> The right to contribution is predicated upon the principle that all insurers
> are equally liable for the discharge of a common obligation, and arises
> even though, for the obligation involved, the sureties are bound by
> separate instruments.
>
> [The subcontractors] were contractual indemnitors of a common obligation, *i.e.*,
> the cost of the defense of Karnatz' suit.  Neither contract contemplated the
> existence of the other, or provided for apportionment of liability for costs in the
> event of multiple coverage.  It follows that neither indemnitor had the primary
> obligation to finance Wright's defense.  Under the doctrine of contribution, each
> should bear one-half of the cost.

*Karnatz*, 8 Wn. App. at 81-82 (citations omitted) (emphasis in original).

16        In the instant motion, plaintiffs once again clarify that their primary dispute with defendant is

17    based on the cost of defending the Wellington entities, not the cost of indemnifying the Wellington

18    entities.  Accordingly, the Court continues to find that the underlying complaint triggered

19    defendant's duty to defend, and it is of no import that plaintiffs' policies do not cover the same

20    subcontractors as defendant's policy.  Therefore, defendant's motion for summary judgment with

21    respect to contribution will be denied, and summary judgment shall be entered in favor of plaintiffs.

22        **E.  Claim Bar Order**

23        Defendant next asks this Court to bar any other parties from bringing actions against it for

24    contribution, on the basis that defendant has already contributed to such a claim through its good

25    faith and reasonable settlement on behalf of IBA.  Because the Court has determined that defendant

26

ORDER
PAGE - 7

is obligated to equitably contribute to the defense of the Wellington entities, it finds no basis to issue a claim bar order.

### III. CONCLUSION

Having reviewed defendant's motion for summary judgment, plaintiffs' response and motion for summary judgment, Cheswick Lane Homeowners Association's opposition to the defendant's motion for summary judgment, defendant's reply, the declarations and exhibits in support of those briefs, and the remainder of the record, the Court hereby ORDERS:

(1)  Defendant's Motion for Summary Judgment (Dkt. #93) is DENIED.

(2)  Plaintiff's request for summary judgment is GRANTED.  For the reasons set forth above, the Court finds that defendant is required to contribute to the defense of the Wellington entities in the underlying action.

(3)  In their response and request for summary judgment, plaintiffs made clear that their dispute with Hartford was based on the obligation to contribute to the defense, not indemnity, of the Wellington entities.  The Court granted summary judgment in favor of plaintiffs on that basis. Nothing in plaintiffs' briefing suggests that there are any remaining claims against Hartford in this action.  As a result, Hartford Casualty Insurance Company is hereby DISMISSED as a defendant to this action.

(4)  The Clerk shall forward a copy of this Memorandum Order to all counsel of record.

DATED this 31st day of January, 2007.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 8