UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALLEY INSURANCE COMPANY and
TRINITY INSURANCE COMPANY,

        Plaintiffs,

        v.

WELLINGTON CHESWICK, LLC, *et al.*,

        Defendants.

CASE NO.  C05-1886RSM

MEMORANDUM ORDER
GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

## I.  INTRODUCTION

This matter comes before the Court on defendant Century Surety Company's

("Century") Motion for Summary Judgment on the issue of whether it is required to contribute

to plaintiffs' defense and indemnification of Wellington Cheswick, LLC and Wellington Crown

Corporation Inc. ("the Wellington entities") in the underlying state court proceeding.  (Dkt.

#131).  Specifically, defendant argues that plaintiffs are not entitled to contribution because the

underlying complaint does not allege facts demonstrating liability under its insurance policy.

Because its liability is not triggered, defendant asks the Court to rule, as a matter of law, that it

has no duty to defend or indemnify against the underlying construction defect claims and dismiss

all claims against it in this action.  Plaintiffs request that summary judgment be granted in their

ORDER
PAGE - 1

1    favor on the basis that the Complaint properly alleges facts triggering a duty to defend and

2    indemnify, and no exclusions in the policy would apply if those facts were proven.  (Dkt. #142).

3    For the reasons set forth below, the Court disagrees with plaintiffs and GRANTS defendant's

4    motion for summary judgment.

5                                    **II.  DISCUSSION**.

6        **A. Background**

7        This action arises from a construction defect lawsuit in King County Superior Court.

8    Defendant Wellington Cheswick, LLC was the developer of a new construction condominium

9    project known as the Cheswick Lanes Condominiums.  Co-defendant First Wellington Crown

10   Corporation, Inc. was the managing member of Wellington Cheswick.  The general contractor

11   on the project was Wellington Builders of Washington, Ltd.  Wellington Builders hired a number

12   of subcontractors to complete the work on the project.  Work began on or about November 5,

13   1999, and was completed no later than September 2002.

14       During the project, the developer, general contractor and subcontractors each carried

15   their own commercial general liability insurance policies.  In addition, the subcontracts required

16   the subcontractors to cause Wellington Builders and Wellington Cheswick to be named as

17   additional insureds under the subcontractors' liability policies.  Defendant Century issued a

18   policy to Northstar Aluminum ("Northstar"), the subcontractor responsible for the installation of

19   the handrails on the front steps and rear decks of the condominiums.  The policy contained an

20   endorsement extending additional insured coverage to Wellington Builders and First Wellington

21   Crown Corporation, but only with respect to liability arising out of the ongoing operations

22   performed for the named insured.

23       In 2004, the Cheswick Lane Owners Association sued the Wellington entities in King

24   County Superior Court, alleging that the condominiums had been damaged due to defective

25   construction.  The alleged defects included, among others, defects in the construction of the roof

26

ORDER
PAGE - 2

performed by America 1st Roofing, defects in the mechanical work performed by G&M Mechanical, and defects in the handrails.  Plaintiff Valley Insurance Company insured America 1st Roofing, and co-plaintiff Trinity Insurance Company insured G&M Mechanics.

After the lawsuit was filed, Wellington Builders assigned any rights it had against the subcontractors to Wellington Cheswick, which subsequently brought a third party complaint against 19 of the subcontractors.  The Wellington entities tendered claims for defense and indemnity in the initial lawsuit to their own insurers, Lloyds of London and National Fire and Marine Insurance Company.  The Wellington entities then tendered claims for defense and indemnity to many of the subcontractors' insurers, alleging that the Wellington entities were additional insureds under those policies.  Century denied the tender.  Valley Insurance and Trinity Insurance accepted the tenders under a reservation of rights.

Valley and Trinity then brought the instant action seeking a declaratory judgment regarding the obligations of the various subcontractors' insurers to contribute to the defense and indemnity obligations of the Wellington entities.  This motion for summary judgment followed.

**B. Summary Judgment Standard**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The Court must draw all reasonable inferences in favor of the non-moving party.  *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds*, 512 U.S. 79 (1994).  The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial.  *See Anderson*, 477 U.S. at 257.  Mere disagreement, or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment.  *See California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics,*

*Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248.  Material facts are those which might affect the outcome of the suit under governing law.  *See id.*  In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747).  Furthermore, conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment.  *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F. 3d 337, 345 (9th Cir. 1995).  Similarly, hearsay evidence may not be considered in deciding whether material facts are at issue in summary judgment motions.  *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610 F. 2d 665, 667 (9th Cir. 1980).

Here, plaintiffs agree, for purposes of this motion, with defendant's factual allegations.[1] (Dkt. #142 at 3).  Plaintiffs also agree that the issues raised in this motion should be resolved on summary judgment, as there is no need to prolong litigation when the facts are not in dispute.

## C.  Applicable Law

The instant case was brought in this Court based on diversity of the parties.  (Dkt. #1). Accordingly, the issues presented are governed by Washington State law.  *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941); *Insurance Co. N. Am. v. Federal Express Corp.*, 189 F.3d 914, 919 (9th Cir. 1999) (explaining that in an ordinary diversity case, federal courts apply the substantive law of the forum in which the court is located).  The parties do not appear to dispute that Washington State law is applicable in this case.

In Washington, interpretation of an insurance contract is a matter of law, which requires

---

[1] Plaintiffs do note that there is a factual dispute with respect to which additional insured endorsement applies to the Wellington entities; however, they also assert that the dispute is not material to the resolution on this motion, and is therefore irrelevant.  (*See* Dkt. #142 at 3).

ORDER
PAGE - 4

the Court to consider the contract in its entirety and to give effect to each policy provision. *Allstate Ins. Co. v. Peasley*, 131 Wn.2d 420, 423-24 (1997); *PUD No. 1 of Klickitat County v. International Ins. Co.*, 124 Wn.2d 789, 881 (1994).  In addition, insurance contracts are interpreted using ordinary contract interpretation principles.  Generally, insurance contracts are interpreted in the manner understood by the average purchaser of the policy.  *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 877 (1990); *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 480 (1984).  Thus, terms contained in an insurance policy are given their plain, ordinary, and popular meanings.

A policy is ambiguous only if its provisions are susceptible to two different interpretations, both of which are reasonable.  *Id.* at 424; *McDonald Industries v. Rollins Leasing Corp.*, 95 Wash 2d 909, 913 (1981).  In determining whether an ambiguity exists, the Court views the language the way it would be read by the average insurance purchaser, and will give any undefined terms their ordinary meanings, not technical, legal meanings.  *Allstate Ins.*, 131 Wn.2d at 424.  Ambiguous provisions are generally construed against the insurer; however, "[a]n ambiguity will not be read into a contract where it can be reasonably avoided by reading the contract as a whole."  *Universal/Land Const. Co. v. City of Spokane*, 49 Wn. App. 634, 637 (1987).

### D.  Obligation to Contribute to Defense

As this Court has previously explained, an insurer has a duty to defend if the complaint, construed liberally, alleges facts which, if proven, impose liability within the policy's coverage.  *Unigard Ins. Co. v. Leven*, 97 Wn. App. 417, 425 (1999).  If the alleged claims are clearly not covered, then the insurer has no duty to defend.  *Cle Elum Bowl, Inc. v. N. Pac. Ins. Co.*, 96 Wn. App. 698, 703 (1999).  Washington State law is clear that the interpretation of policy language contained in an insurance contract is a question of law.  *See e.g.*, *Butzberger v. Foster*, 151 Wn.2d 396, 401 (2004); *Public Utility Dist. No. 1 of Klickitat County v. International Ins.*

1    Co., 124 Wn.2d 787, 797 (1994); *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724,

2    730 (1992). Thus, the Court must determine whether the underlying complaint alleges facts

3    which could impose liability within the policy's coverage, and whether such liability was within

4    the scope of coverage of the additional insured endorsement.

5          In the underlying complaint, the homeowners allege "systemic construction defects"

6    including:

7             defects or deficiencies in the Project's materials and/or the installation of the
              materials, and/or in the design, and/or construction of the Project's building
8             envelope system and underlying weather resistive barrier, windows, doors and
              other penetrations, decks, attics, crawl spaces, walk-ways, venting systems,
9             *guardrails*, fire safety systems, structural components, architectural
              components, and plumbing and other mechanical systems. The defects
10            include, but are not limited to, the defects listed in the Association's . . .
              Notice of Claim for Construction Defects. . . .
11            . . .

12            14. The defects or deficiencies described above have resulted in physical
              damage to the Project, are presently causing damage to the Project, and will
13            likely result in additional physical damage to the Project. The physical
              damage includes, but is not limited to, damage caused by water intrusion into
14            and through the building envelope and its underlying components, which has
              caused exterior and interior building surfaces and underlying components to
15            deteriorate prematurely, and which has physically damaged various other
              building components and other property and has reduced the useful life of the
16            Project's building components.

17   (Dkt. #132, Ex. 1 at 4) (emphasis added).

18         In addition, the underlying complaint incorporates by reference a List of Known

19   Construction Defects. (Dkt. #132, Ex. 1, Attachment). That List includes reports by various

20   entities identifying specific alleged defects throughout the project. One report, issued by Pacific

21   Engineering Technologies, Inc., identifies two defects with the guardrails: (1) that the guardrail

22   at the entry of Unit 933 is 36 inches tall rather than 42 inches tall, and therefore does not meet

23   Uniform Building Code ("UBC") standards; and (2) the type of screws used to fasten the metal

24   deck guardrail posts do not provide the requisite UBC capacity in tension, and therefore the

25   existing base plate fastening system does not comply with UBS standards. (Dkt. #132, Ex. 1,

26

ORDER
PAGE - 6

Attachment – Pacific Engineering Report (Ex. B) at 5 and 15). The report does not make any statement as to how these two defects would have led to any water damage to the Project. Indeed, with respect to the guardrails, the report states that there are 36 inch guardrails in other parts of the project that are acceptable. With respect to the deck guardrail posts, the report states only that the use of improper screws creates a safety problem. *Id.*

Pursuant to the requirements of the subcontracts, the subcontractors obtained insurance policies with additional insured endorsements. Those endorsements extended additional coverage to the Wellington entities if certain circumstances existed. The policy issued by Century contained an Endorsement which stated:

> **Who Is An Insured (Section II)** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

(Dkt. #132, Ex. 3 at 211).

Under the Insuring Agreement of that policy, Century agreed to pay those sums the insured becomes legally obligated to pay as damages because of bodily injury or property damage as follows:

> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
>    **a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

(Dkt. #132, Ex. 3 at 173).

The policy defines "property damage" as:

> **17.** "Property damage" means:

ORDER
PAGE - 7

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(Dkt. #132, Ex. 3 at 185). The policy provides coverage only for "property damage" caused by an "occurrence," and excludes coverage for property damage to property that must be restored, repaired or replaced because Northstar incorrectly performed its work. (Dkt. #132, Ex. 3 at 173 and 176).

At issue in this motion, is not whether the Wellington entities are additional insureds under defendant's policy. Rather, defendant argues that, even if proven true, the alleged defects in the guardrails do not constitute "property damage" as defined in the policy, and therefore neither the duty to defend nor duty to indemnify is triggered. For the reasons discussed below, the Court agrees with defendant.

In this case, the underlying Complaint on its face does not allege that Northstar caused physical injury to tangible property. Indeed, the only specific defects with respect to Northstar, the use of improper screws and one railing that is not tall enough, do not appear to be related in any way to water intrusion or any other process that allows for water intrusion.

Washington courts have concluded the same when examining similar policies in other cases. For example, in *Yakima Cement Products Co. v. Great American Insurance Co.*, 93 Wn.2d 210, 258-59 (1980), the Washington Supreme Court held that where there was no evidence of damage to other components of the buildings at issue, no property damage had occurred within the meaning of the policy. Similarly, in *Aetna Casualty and Surety Co. v. McIbs, Inc.*, 684 F. Supp. 246, 248 (D. Nev. 1988), the district court determined that where there was no evidence of damage to property other than the insured's own property, physical injury had not occurred within the meaning of the policy, and therefore no property damage had

ORDER
PAGE - 8

occurred.  The Court must reach the same conclusion here.  There is no allegation or other factual statement contained in the underlying complaint that indicates any damage to the Project other than to Northstar's own guardrails.

Plaintiffs respond that defendant's arguments are misplaced because the duty to defend is broader than the duty to indemnify.  They point to the underlying complaint's general allegation that all of the defects noted in the complaint have resulted in physical damage to the Project, are presently causing damage to the Project, and will likely result in addition physical damage to the Project.  Plaintiffs go on to assert that "it is conceivable that defectively installed guardrails could cause property damage to the Project."  (Dkt. #142 at 5).  The flaw with plaintiffs' argument is that there is no evidence in this case, nor are there any other allegations in the underlying complaint, that the height of the one guardrail in front of Unit 933 or the type of screws used in the deck guardrails have caused damage to any portion of the building other than defendant's own guardrails, or that any alleged defects in the guardrails have led to the type of water intrusion or resulting damage that is alleged.  In *Scottsdale Insurance v. International Protective Society*, 105 Wn. App. 244 (2001), the Washington Court of Appeals explained that where there were no specific allegations or evidence in the complaint alleging property damage within the meaning of the policy, like the instant case, there could be no duty to defend or indemnify.  105 Wn. App. at 250.

Accordingly, the Court now finds that Century has no duty to defend or indemnify the Wellington entities, and therefore plaintiffs are not entitled to contribution.[2]  Because the Court finds that the underlying complaint does not allege facts which, if proven, impose liability within the policy's coverage, the Court need not reach defendant's arguments pertaining to exclusions in the policy.

---

[2] The Court notes that plaintiffs have not responded to defendant's argument that it is not required to indemnify the Wellington entities, and therefore the Court assumes that plaintiffs have conceded that issue.

ORDER
PAGE - 9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### III. CONCLUSION

Having reviewed defendant's motion for summary judgment, plaintiffs' response and request for summary judgment, defendant's reply, the declarations and exhibits in support of those briefs, and the remainder of the record, the Court hereby ORDERS:

(1)  Defendant's Motion for Summary Judgment (Dkt. #131) is GRANTED, and it is hereby DISMISSED as a defendant to this action.

(2)  Plaintiff's request for summary judgment is DENIED.

(3)  The Clerk shall forward a copy of this Memorandum Order to all counsel of record.

DATED this 31st day of January, 2007.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 10