UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALLEY INSURANCE COMPANY and
TRINITY INSURANCE COMPANY,

Plaintiffs,

v.

WELLINGTON CHESWICK, LLC, *et al.*,

Defendants.

CASE NO.  C05-1886RSM

MEMORANDUM ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on defendant Contractors Bonding and Insurance Company's ("CBIC") Motion for Summary Judgment on the issue of whether it is required to contribute to plaintiffs' defense and indemnification of Wellington Cheswick, LLC and Wellington Crown Corporation Inc. ("the Wellington entities") in the underlying state court proceeding. (Dkt. #134).  Defendant argues that plaintiffs are not entitled to contribution because: (1) there is no joint and several liability among the parties; (2) existing Manifestation Endorsements prevent coverage under the policies at issue; and (3) exclusions in the policies at issue prevent coverage.  Because its liability is not triggered, defendant asks the Court to rule, as a matter of law, that it has no duty to defend or indemnify against the underlying construction

ORDER
PAGE - 1

1  defect claims and dismiss all claims against it in this action.  Plaintiffs request that summary
2  judgment be denied because the underlying complaint properly alleges facts triggering a duty to
3  defend and indemnify, and no exclusions in the policy would apply if those facts were proven.
4  (Dkt. #148).  For the reasons set forth below, the Court disagrees with plaintiffs and GRANTS
5  defendant's motion for summary judgment.

## II. DISCUSSION.

### A. Background

This action arises from a construction defect lawsuit in King County Superior Court. Defendant Wellington Cheswick, LLC was the developer of a new construction condominium project known as the Cheswick Lanes Condominiums.  Co-defendant First Wellington Crown Corporation, Inc. was the managing member of Wellington Cheswick.  The general contractor on the project was Wellington Builders of Washington, Ltd.  Wellington Builders hired a number of subcontractors to complete the work on the project.  Work began on or about November 5, 1999, and was completed no later than September 2002.[1]

During the project, the developer, general contractor and subcontractors each carried their own commercial general liability insurance policies.  In addition, the subcontracts required the subcontractors to cause Wellington Builders and Wellington Cheswick to be named as additional insureds under the subcontractors' liability policies.  Defendant CBIC issued two policies, covering separate coverage periods, to Northwest Custom Gutters ("NWG"), the subcontractor responsible for the gutter installation work.  The policies each contained an endorsement extending additional insured coverage to Wellington Builders and First Wellington Crown Corporation, but only with respect to liability occurring during the ongoing operations of

---

[1] The Court notes that there is a dispute in this motion about when the work was completed for insurance purposes, and recognizes defendant's argument that work was considered completed when the Certificate of Occupancy was issued.  (*See* Dkt. #134 at 20-21).  However, because this motion will be granted on a different basis, the Court does not resolve that dispute.

ORDER
PAGE - 2

NWG.

In 2004, the Cheswick Lane Owners Association sued the Wellington entities in King County Superior Court, alleging that the condominiums had been damaged due to defective construction. The alleged defects included, among others, defects in the construction of the roof performed by America 1st Roofing, defects in the mechanical work performed by G&M Mechanical, and defects in the gutter work performed by NWG. Plaintiff Valley Insurance Company insured America 1st Roofing, and co-plaintiff Trinity Insurance Company insured G&M Mechanics.

After the lawsuit was filed, Wellington Builders assigned any rights it had against the subcontractors to Wellington Cheswick, which subsequently brought a third party complaint against 19 of the subcontractors. The Wellington entities tendered claims for defense and indemnity in the initial lawsuit to their own insurers, Lloyds of London and National Fire and Marine Insurance Company. The Wellington entities then tendered claims for defense and indemnity to many of the subcontractors' insurers, alleging that the Wellington entities were additional insureds under those policies. CBIC acknowledged that the Wellington entities qualified as additional insureds under their policies, but denied the tender on the basis that no additional coverage was owed because of certain applicable exclusions and because of the Manifestation Endorsements contained in the policies. Valley Insurance and Trinity Insurance accepted the tenders under a reservation of rights.

Valley and Trinity then brought the instant action seeking a declaratory judgment regarding the obligations of the various subcontractors' insurers to contribute to the defense and indemnity obligations of the Wellington entities. This motion for summary judgment followed.

**B. Summary Judgment Standard**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

1  genuine issue as to any material fact and that the moving party is entitled to judgment as a
2  matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247
3  (1986).  The Court must draw all reasonable inferences in favor of the non-moving party. *See*
4  *F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds*,
5  512 U.S. 79 (1994).  The moving party has the burden of demonstrating the absence of a
6  genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 257.  Mere disagreement, or
7  the bald assertion that a genuine issue of material fact exists, no longer precludes the use of
8  summary judgment. *See California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics,*
9  *Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

10         Genuine factual issues are those for which the evidence is such that "a reasonable jury
11 could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248.  Material facts are
12 those which might affect the outcome of the suit under governing law. *See id.*  In ruling on
13 summary judgment, a court does not weigh evidence to determine the truth of the matter, but
14 "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d
15 547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747).  Furthermore,
16 conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat
17 summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F. 3d 337, 345
18 (9th Cir. 1995).  Similarly, hearsay evidence may not be considered in deciding whether material
19 facts are at issue in summary judgment motions. *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610
20 F. 2d 665, 667 (9th Cir. 1980).  Here, it appears that plaintiffs agree, for purposes of this
21 motion, with defendant's factual allegations.

22        **C. Applicable Law**

23        The instant case was brought in this Court based on diversity of the parties.  (Dkt. #1).
24 Accordingly, the issues presented are governed by Washington State law. *See Klaxon Co. v.*
25 *Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941); *Insurance Co. N. Am. v. Federal Express*
26

ORDER
PAGE - 4

*Corp.*, 189 F.3d 914, 919 (9th Cir. 1999) (explaining that in an ordinary diversity case, federal courts apply the substantive law of the forum in which the court is located). The parties do not appear to dispute that Washington State law is applicable in this case.

In Washington, interpretation of an insurance contract is a matter of law, which requires the Court to consider the contract in its entirety and to give effect to each policy provision. *Allstate Ins. Co. v. Peasley*, 131 Wn.2d 420, 423-24 (1997); *PUD No. 1 of Klickitat County v. International Ins. Co.*, 124 Wn.2d 789, 881 (1994). In addition, insurance contracts are interpreted using ordinary contract interpretation principles. Generally, insurance contracts are interpreted in the manner understood by the average purchaser of the policy. *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 877 (1990); *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 480 (1984). Thus, terms contained in an insurance policy are given their plain, ordinary, and popular meanings.

A policy is ambiguous only if its provisions are susceptible to two different interpretations, both of which are reasonable. *Id.* at 424; *McDonald Industries v. Rollins Leasing Corp.*, 95 Wash 2d 909, 913 (1981). In determining whether an ambiguity exists, the Court views the language the way it would be read by the average insurance purchaser, and will give any undefined terms their ordinary meanings, not technical, legal meanings. *Allstate Ins.*, 131 Wn.2d at 424. Ambiguous provisions are generally construed against the insurer; however, "[a]n ambiguity will not be read into a contract where it can be reasonably avoided by reading the contract as a whole." *Universal/Land Const. Co. v. City of Spokane*, 49 Wn. App. 634, 637 (1987).

**D. Motion to Strike**

As a preliminary matter, defendant has asked that the Court strike or otherwise decline to consider two documents: (1) the 1979 Insurance Services Organization ("ISO") Circular attached to plaintiffs' response brief; and (2) Exhibit A attached to the Declaration of Brent

ORDER
PAGE - 5

Beecher in support of plaintiff's response, which appears to be registration data for the Cheswick Lane Condominium Owners Association available on the Washington Secretary of State's website. The Court addresses each of these documents in turn below.

### 1. *ISO Circular*

Defendant asks that the Court strike a 1979 ISO Circular attached to plaintiffs' response brief on the basis that it has not been properly authenticated, and because it appears to be a copy of a document that is several generations removed from its original. The Court agrees that the document has not been properly authenticated, by anyone, and it will not consider the document on this motion for summary judgment.[2]

### 2. *Condominium Registration*

Defendant next asks the Court to strike an internet document showing registration data for the Cheswick Lane Condominium Owners Association on the basis that it does not provide the proper foundation to support plaintiffs' claims. The Court first notes that it has the ability to determine the proper weight to afford counsel's arguments, and therefore finds no reason to strike an otherwise authentic document. In any event, the Court finds defendant's request moot because it does not rely on the document in reaching its decision below.

### E. Joint and Several Liability

Defendant first argues that plaintiffs are not entitled to contribution because defendant is not jointly and severally liable for the claims against the Wellington entities as the parties do not insure the same risks. This Court has previously rejected this argument, and continues to rely on the same analysis in this Order. (*See* Dkts. #115 and #187). Accordingly, the Court now turns to defendant's remaining arguments.

---

[2] The Court also notes that plaintiffs' counsel has not been signing his briefs or declarations in the appropriate electronic format. The correct electronic signature format can be found in the Court's Electronic Filing User's Manual, under the Procedures section, which is available on this Court's website. Plaintiffs are warned that the continued failure to follow those procedures could result in this Court striking future filings from the record.

ORDER
PAGE - 6

**F. Obligation to Contribute to Defense**

As this Court has explained now in three prior Orders, an insurer has a duty to defend if the complaint, construed liberally, alleges facts which, if proven, impose liability within the policy's coverage. *Unigard Ins. Co. v. Leven*, 97 Wn. App. 417, 425 (1999). If the alleged claims are clearly not covered, then the insurer has no duty to defend. *Cle Elum Bowl, Inc. v. N. Pac. Ins. Co.*, 96 Wn. App. 698, 703 (1999). Washington State law is clear that the interpretation of policy language contained in an insurance contract is a question of law. *See e.g.*, *Butzberger v. Foster*, 151 Wn.2d 396, 401 (2004); *Public Utility Dist. No. 1 of Klickitat County v. International Ins.* Co., 124 Wn.2d 787, 797 (1994); *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 730 (1992). Thus, the Court must determine whether the underlying complaint alleges facts which could impose liability within the policy's coverage, and whether such liability was within the scope of coverage of the additional insured endorsement.

Determining whether there is coverage is a two-step process. *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 730-31 (1992). The burden is initially placed on the insured to show its loss falls within the scope of the losses insured under the policy. *Id.* at 731. Establishing that a policy is in effect is not the same as establishing there is coverage. For example, even if an insured meets its burden to show its loss falls under the policy, the insurer may nevertheless avoid liability by showing the claimed loss is excluded by specific provisions of the policy. *Olivine Corp. v. United Capitol Ins. Co.*, 147 Wn.2d 148, 164-165 (2002).

In the underlying complaint, the homeowners allege "systemic construction defects" including:

> defects or deficiencies in the Project's materials and/or the installation of the materials, and/or in the design, and/or construction of the Project's building envelope system and underlying weather resistive barrier, windows, doors and other penetrations, decks, attics, crawl spaces, walk-ways, venting systems, guardrails, fire safety systems, structural components, architectural components, and plumbing and other mechanical systems. The defects include, but are not limited to, the defects listed in the Association's . . . Notice of Claim for Construction Defects. . . .

ORDER
PAGE - 7

. . .

> 14. The defects or deficiencies described above have resulted in physical damage to the Project, are presently causing damage to the Project, and will likely result in additional physical damage to the Project. The physical damage includes, but is not limited to, damage caused by water intrusion into and through the building envelope and its underlying components, which has caused exterior and interior building surfaces and underlying components to deteriorate prematurely, and which has physically damaged various other building components and other property and has reduced the useful life of the Project's building components.

(Dkt. #137, Ex. F at 4).

Defendant argues that these losses do not fall within the scope of coverage under defendant's policies because each policy contains conditions precedent to coverage that have not been satisfied in this case. Specifically, defendant points to the "Manifestation Endorsement," which requires that the plaintiff in the underlying action must sustain damages during the relevant CBIC policy periods. Defendant argues that because neither the plaintiff in the underlying action – the Cheswick Lane Condominiums Homeowners Association ("Association") – nor any of its members actually owned any portion of the premises during the policy periods, it could not have suffered any damages during that time, and therefore coverage is excluded. The Court agrees with defendant.

The policies at issue in this motion each contained the following endorsement which amended Section 1.b of the Insuring Agreement:

> Paragraph 1.b. Insuring Agreement of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section 1 - Coverages) is replaced by the following:
>
> **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> **(2)** The first "manifestation" of "bodily injury" or "property" damage occurs during the policy period; and
>
> **(3)** The person making a claim or bringing a "suit" sustains damages during the policy period because of the "bodily

ORDER
PAGE - 8

>  injury" or "property damage".
>
> "Manifestation" means the time at which "bodily injury" or "property damage" is apparent to any person, including but not limited to any claimant, health care professional, property owner, property manager, occupant, contractor or maintenance worker, whether or not such person is an insured under this Coverage Form.

(Dkt. #137, Ex. D at 321 and Ex. E at 392). The policies covered periods 9/14/99 to 9/14/00 and 9/14/00 to 12/2/00.

Plaintiffs assert that the correct reading of the endorsement requires an examination of the word "sustains." Plaintiffs argue that in the context of this policy the word "sustains" essentially substitutes for the word "have." Thus, plaintiffs argue, a logical interpretation of the Manifestation Endorsement in these circumstances is that at least some of the damage that gave rise to the cause of action owned by the Association must take place during the policy period. Plaintiffs then argue that the underlying complaint was broad enough to assert such liability, and therefore defendant was obligated to provide a defense. The flaw with plaintiffs' argument is that the Association did not own the premises during CBIC's policy periods. Therefore, the Association could not have sustained (whatever that word's meaning) damages during the policy period.

Plaintiffs respond that because the Association was established on March 30, 2000, before CBIC's policy period ended, the Association could have sustained damages during the pertinent period. That argument is also flawed. First, plaintiff has failed to provide any evidence that the Association had any members during the time in which the policies were in effect.[3] Second, it is well settled in Washington that the rights being asserted by the Association are those of the individual homeowners. *See Stuart v. Coldwell Banker Commercial Corp.*, 109 Wn.2d 406, 414 (1987). During the CBIC policy periods there were no individual homeowners,

---

[3] The registration data upon which plaintiffs rely simply demonstrates that the Association incorporated on March 30, 2000. (Dkt. #149, Ex. A).

ORDER
PAGE - 9

as the first sale did not occur until December 15, 2000, and therefore no member could have sustained any property damage during that time.

Accordingly, the Court agrees with defendant that a condition precedent to coverage has not been met in this case, and, as a result, defendant is not required to contribute to plaintiffs' defense and indemnification of the Wellington entities. It is not necessary for this Court to reach defendant's remaining ongoing operations arguments.

### III. CONCLUSION

Having reviewed defendant's motion for summary judgment, plaintiffs' response, defendant's reply, the declarations and exhibits in support of those briefs, and the remainder of the record, the Court hereby ORDERS:

(1) Defendant's Motion for Summary Judgment (Dkt. #134) is GRANTED, and CBIC is hereby DISMISSED as a defendant to this action.

(2) The Clerk shall forward a copy of this Memorandum Order to all counsel of record.

DATED this 2nd day of February, 2007.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE